The opinion of the Court was delivered by
Tilghman C. J.
It is a rule of law, that what a deceased witness swore at a former trial, may be given in evidence at a subsequent trial of a cause depending between the same parties. This is from necessity. It is an exception from the general rule, which demands the examination of a witness viva voce, and must be extended no further than necessity requires. The deceased witness cannot be examined; therefore a living witness is permitted to prove what the deceased had said. But this proof must be on oath, because there is no necessity that it should be otherwise. Mr. Smith, therefore, might have been permitted to declare upon his oath, and not otherwise, what Ellmaker had sworn on the former trial. But he could not undertake to prove this upon his oath, and therefore it was endeavoured to supply the defect of oath, by his notes; these notes have no character recognised by the law; they are no more than a private memorandum, by which the witness would have been permitted to refresh his memory y but when refreshed, he must swear from his own memory, and not from his notes. This Mr. Smith was so far from being able to do, that he declared he had no recollection of Ellmaker’’s testimony, even after he had read his notes. The notes, therefore, could not be admitted as evidence, without violating the principles of the law. It would be evidence of the most dangerous nature. Mr. Smith is known to be a man of remarkable accuracy. But others who take notes, may be of a different character. In general, the taker of notes condenses the words of the witness into what he supposes to be the substance. But the partiality of counsel inclines them to view every thing in a light favourable to their cause; and during the trial, their ideas pass through a medium, which diverts them from the right line; of this, I presume Mr. Smith was sensible, and therefore he would not undertake to swear, that his notes contained the exact testimony of Ell- *206 maker. It would be most extraordinary then, if the Court should give more credit to his notes, than he gave to them himself. In short, it appears to me, that to suffer such a writjng to g0 to the jury, would be to admit evidence xvithoui oath, of what Ellmaker had sworn. The case of Miles v. O'Hara, was cited for the plaintiff. All that was decided in that case was, that the notes of Judge Yeates, unsupported by his oath, were not evidence ; but what testimony would have been required of the Judge, in order to make his notes evidence, was not a question before the Court, and consequently was not decided.
2. The second bill of exceptions in this case, was taken because the Court refused to admit evidence, offered by the plaintiff, of the declaration of a certain Jacob Wike, (named an executor and devisee in the writing set up as the will of George Wike deceased,) made after the death of the said George Wike, that he had left no will. Jacob Wike was no party to this suit, nor could the verdict be given in evidence, for or against him; he was a competent witness. Clearly, therefore, his declarations were not evidence. They do not fall within the reason of confessions by a party to the suit.
3. A third bill of exceptions was taken by the plaintiff. After the defendant had given in evidence, the deposition of Leonard Ellmaker deceased, in which the said Ellmaker swore to a confidential communication made to him by old George Wike, and also swore, that he and the said Wike had been long in the most intimate and unreserved friendship ; the plaintiff offered to prove, by the deposition of Christian Smoker, that in a conversation with the said Wike, the supposed testator, he asked him, “ where he got his grinding done ; he answered, at Henderson’s mill; the deponent then asked him, whether he did not grind at Ellmaker’s mill; he answered, that he had need enough of his own grain; that he had his grinding done at Rine’s mill, and Hesse’s mill.” This evidence was objected to by the defendant, and rejected by the Court. Of what importance the jury might have thought it, I know not, but the evidence should have gone to them; because it went in some degree to contradict the assertion of Ellmaker, that he was the intimate and confidential friend of George Wike, and to shew the improbability of Wike’s having intrusted to Ellmaker, family concerns of a *207 very delicate nature. It is not hearsay evidence, but matter of fact, tending to rebut other evidence of a similar nature which had been given by the defendant. It was not offered to discredit directly the character of Elltnaker, but to shew, that what he had sworn was not the truth, because inconsistent with other facts. It was, therefore, legal evidence.
My opinion, upon the whole, is, that the judgment should be reversed, and a venire facias de novo awarded.
Judgment reversed, and a venire facing de novo awarded.